**UNITED STATES, Appellee,**

v.

**Corporal Joseph E. CHRISTIAN, Jr.,
SSN 218–58–5728, United States
Army, Appellant.**

**SPCM 13501.**

U. S. Army Court of Military Review.

31 Oct. 1978.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Grifton E. Carden, JAGC, and Captain Peter A. Nolan, JAGC, were on the pleadings for appellant.

Colonel Thomas H. Davis, JAGC, Lieutenant Colonel R. R. Boller, JAGC, Captain Douglas P. Franklin, JAGC, and Captain Brian X. Bush, JAGC, were on the pleadings for appellee.

Before JONES, DeFORD and LEWIS, Appellate Military Judges.

## OPINION OF THE COURT

LEWIS, Judge:

Contrary to his pleas, the appellant was convicted of wrongful possession of phencyclidine.[1] He was sentenced to a bad-conduct discharge.

Appellant asserts five errors as requiring reversal. Our disposition of the first renders it unnecessary to address the remainder.

A brief recitation of the circumstances leading up to the seizure of the phencyclidine is appropriate. Military Police Investigator Cox, a member of the Fort Hood Drug Suppression Team, received information from a soldier that three[2] other soldiers (McNeil, a white, and two unknown blacks), were prepared to sell him $600.00 worth of "Thai sticks", a form of marijuana. On the basis of the informant's apparent reliability stemming from earlier fruitful work of this nature, MPI Cox secured $600.00 in government funds with which to make the purchase and accompanied the informant to his rendezvous in a battalion parking lot. Agent White and MPI Przepiz, also of the suppression team, were dispatched to the scene to maintain covert surveillance. Upon arrival in the lot, the informant and MPI Cox purchased[3] some

---

1. A violation of Army Regulation 600–50 and, thereby a violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892.

2. The informant in his testimony at trial could not be certain whether he had told the suppression team that it would be two or that it would be three individuals who were selling the contraband.

3. We note parenthetically that, at this juncture, the informant had become not only an infor-

contraband of a value of $300.00 and lured the seller (McNeil) to an unmarked CID van where he was quietly apprehended. The informant and Cox returned to the lot and were in the process of purchasing $80 of contraband from a black (subsequently identified as Davis), when appellant (also a black) half-trotted up to the group and uttered something to Davis. With that, Davis was apprehended by MPI Cox and appellant was apprehended at Cox's direction by MPI Przepiz, who was approaching the same group from another quarter. A packet containing the phencyclidine was purportedly seen to be discarded by appellant as he was about to be searched incident to his apprehension. A salient issue in the case, therefore, was whether there was probable cause to apprehend the appellant. This issue turned on what the appellant had said to Davis. MPI Cox testified that appellant had said, "Wait, I have some I want to get rid of, too" or words to that effect. He, according to Cox, simultaneously either reached in, or motioned toward his shirt pocket. The informant substantially corroborates Cox's account of the utterance but did not see any hand movement. Appellant, testifying in connection with a suppression motion,[4] stated that he approached Davis to discuss playing basketball. He denied reaching into his shirt. At this point, trial defense counsel "request[ed] the presence of Corporal Davis," arguing that he was a material witness who could testify as to the subject of appellant's remark to Davis. The military judge denied the request. Appellant asserts this as error requiring reversal. We agree.

There is no doubt that, generally, once a requested witness is shown to be material, he must be produced. *United States v. Carpenter*, 1 M.J. 384 (CMA 1976). An exception to this rule is set out in *United States v. Tangpuz*, 5 M.J. 426 (C.M.A. 1978), which held that material witnesses whose testimony would be merely cumulative to that of other witnesses need not be produced. In the case before us, the parties at trial were not in disagreement that, if Davis had any testimony, it would be material to corroborate either Davis on the one hand or MPI Cox and the informant on the other. The trial defense counsel, however, had not talked to Davis to ascertain whether he, at the time of appellant's trial, in fact had any material testimony; i. e., whether he remembered the verbal exchange with the appellant.[5]

We have no difficulty finding that an adequate showing of materiality had been made. The events about which Davis would testify occurred on 3 April 1978. Appellant's trial was on 21 and 22 June 1978, a mere two and a half months afterwards. Significant, too, was Davis' own trial on 12 June 1978, an occasion that would be certain to have sharpened his recollection of the events of 3 April.

We are invited by the Government to find that Davis, in reliance on his counsel's advice to invoke Article 31[6] if called as a witness, would probably have done so and hence be unavailable to provide material evidence. Suffice to say that Davis, once acquitted and discharged from the service: 1) had no military counsel; 2) was not subject to the Uniform Code of Military Justice, and could not invoke Article 31 thereof; 3) had been tried and acquitted and

mant who passed information but a discoverable witness in the case against McNeil by virtue of his participation in the transaction. His continued active participation in the events leading up to the apprehension of Davis and appellant likewise made him a discoverable witness in their cases.

4. Variously described by trial defense and appellate defense counsel as a motion to suppress and an objection to the admission of the phencyclidine.

5. The defense counsel apparently had made an effort to talk to Davis in this connection but had been precluded from doing so by Davis's counsel inasmuch as he was pending separate trial, presumably for similar offenses committed at the same time. Davis was tried and acquitted approximately a week and a half prior to appellant's trial and was immediately discharged as a result of being already past his ETS. Appellant's counsel was on leave when Davis was acquitted and separated.

6. Article 31, UCMJ, 10 U.S.C. § 831.

could not be retried by any federal authority. Accordingly, we decline to find him unavailable on those grounds.

■ Our consideration cannot end with our finding materiality. Improper denial of a request for a defense witness is not automatic ground for reversal of an otherwise valid conviction; it must appear that the denial resulted in a fair risk of prejudice to the accused.[7] The probable cause basis for appellant's apprehension depended upon the outcome of a "swearing contest" between the appellant (with a superb prior record) and an informant (whose testimony lacked the ring of candor) along with an MPI. We find the denial of appellant's request for the production of Davis to have created such fair risk of prejudice. Accordingly, reversal is mandated.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

JONES, Senior Judge, concurs.

DeFORD, Judge, concurring:

I concur in the majority opinion. However, I believe it is appropriate to comment that under the circumstances set forth in this record of trial, the trial judge and this Court were left with a bare minimum of facts to determine the materiality of the requested witness.

Paragraph 115 of the Manual for Courts-Martial, United States, 1969 (Revised edition), is designed to insure that government funds are not wasted in producing witnesses who are not absolutely necessary and material in trials by court-martial.

Here the trial defense counsel had not been able to question the witness Davis during a predominant portion of the pretrial processing of this case. When Davis was available for questioning the trial defense counsel was on leave. As a consequence of the foregoing, the in-court request for the production of Davis was made without the trial defense counsel having even talked with the witness. The trial judge summarily denied the request.

I believe it would have been better procedure for the trial judge to have established on the record the failure of the trial defense counsel to depose the witness, his current address, and the efforts that had been made to contact him prior to trial. The trial judge should have considered the alternative of a continuance in order that the trial defense counsel have an adequate opportunity to locate and talk with the witness before the trial. Some showing of the witness' actual testimony should have been offered to the court during the hearing on the materiality of the witness.

Under the facts of record in this case, we have no alternative but to determine that there exists a fair risk of prejudice to this appellant by the trial court's failure to require the production of the witness Davis who may or may not be able to corroborate the appellant's testimony as to what the appellant stated when the drug sale was consummated and the phencyclidine was discarded. If the trial judge had used the foregoing recommended procedure or a similar one, the court would have been fully informed in the matter and the doubt created here would have been resolved.

---

7. *United States v. Lucas,* 5 M.J. 167 (C.M.A. 1978); *United States v. Jones,* 21 U.S.C.M.A. 215, 44 C.M.R. 269, 272 (1972); *United States v. Green,* 2 M.J. 823 (A.C.M.R.1976); *United States v. Corley,* 1 M.J. 584 (A.C.M.R.1975).